UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
OWENSBORO DIVISION

CIVIL ACTION NO. 4:07CV-137-JHM

VAN EEKEREN FAMILY, LLC                                              PLAINTIFF

V.

CARTER & BURGESS, INC.                                               DEFENDANT

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendant's motion for summary judgment pursuant to the one-year statute of limitations on actions for professional service malpractice provided in KRS § 413.245. Fully briefed, the matter is ripe for decision. For the reasons that follow, Defendant's motion is **GRANTED**.

### I. FACTS

Land O'Frost, Inc., a frozen lunchmeat supplier, hired Carter & Burgess, an architectural and engineering firm, to design and construct a food processing facility in Madisonville, Kentucky. The parties signed a written contract, dated June 9, 2004, entitled Standard Form of Agreement between Owner and Architect with Standard Form of Architect's Services, AIA Document B141 – 1997 ("Design Agreement"). They also entered into a complementary agreement called the Standard Form of Architect's Services: Design and Contract Administration, AIA Document B141 – 1997 ("Contract Administration Agreement"), which was specifically incorporated into and listed as a

1

contract document in Section 1.4.1.3 of the Design Agreement.

Under these agreements, Carter & Burgess was required, among other things, to "work with the Owner's Representative in the preparation of a preliminary estimate of the Cost of the Work" and to "advise the Owner's Representative of any adjustments to previous estimates of the Cost of the Work . . ." (Contract Administration Agreement § 2.1.7, et seq). Carter & Burgess was also responsible for instituting design changes if the project would exceed the $28,000,000 budget by more than $500,000, and for reviewing the proposed locations for the food processing facility. (Id. at §§ 2.3.2, 2.8.3).

At the time the project was in development, Land O'Frost was considering several different locations throughout the Southeastern United States, including locations in Madisonville, Kentucky, Morrilton, Arkansas, Tupelo, Mississippi, and Dyersburg, Tennessee. Land O'Frost ultimately chose Madisonville, Kentucky, and acquired the land upon which the facility was constructed in the second half of 2004. Later, Land O'Frost learned that Madisonville is located within the New Madrid Seismic Zone, the most seismically active region in the United States east of the Rocky Mountains. The heightened structural requirements related to anticipated seismic activity increased project costs beyond initial estimates.

Carter & Burgess had prior experience designing a distribution facility for Wal-Mart in Hopkinsville, Kentucky, located approximately thirty-five miles from the site of the Madisonville project. Despite this experience, however, Carter & Burgess allegedly did not advise Plaintiff that the Madisonville, Kentucky site was located within an

2

identified seismic zone until a January 25, 2005 project meeting. By that time, the Plaintiff had already made substantial investments in terms of time, land acquisition, design, and construction activities at the project site in Madisonville. Land O'Frost claims that if the anticipated costs of constructing a facility in a seismic zone had been timely disclosed by Carter & Burgess, its decision to proceed with the project there would have been materially affected.

Land O'Frost also claims that in addition to increased costs due to seismic design issues Carter & Burgess's design work was otherwise substandard. Specifically, Land O'Frost alleges that there were extra expenses involved in clarifying and modifying the refrigeration drawings, mechanical design drawings, and specification upgrades to the concrete slab, because the design drawings originally submitted by Carter & Burgess were insufficient to allow the contractors to construct the facility. In support of this allegation, it cites to a total of 547 requests for information ("RFIs") submitted by contractors during the pre-bid and construction process, which, it claims, was far in excess of the number of RFIs customarily anticipated for a project of the same size and complexity.

The project was eventually completed. The Certificate of Occupancy was issued on November 8, 2006. And, in the spring of 2007, the facility became operational. On November 14, 2007, Plaintiff brought this action for professional negligence, negligent misrepresentation, breach of contract, and indemnity because of Defendant's alleged failure to timely advise Plaintiff that the site was located in the New Madrid Seismic

Zone and produce design documents in a timely fashion.

## II. DISCUSSION

At issue in this motion is whether the choice-of-law provision in the contract between Land O'Frost and Carter & Burgess incorporates the Texas statutes of limitations[1] or whether the Kentucky statutes of limitations apply. Defendant argues that the choice-of-law provision does not incorporate the Texas statutes of limitations because it does not include an express statement of such an intent. Defendant also contends that all of Plaintiff's claims are subject to (and barred by) Kentucky's one-year statute of limitations for professional services malpractice, i.e., KRS § 413.245. The Court addresses these arguments in turn.

A. The Choice of Law Provision

The Sixth Circuit has explained that "[a]bsent an express statement that the parties intended another state's limitations statute to apply, the procedural law of the forum governs time restrictions on an action for breach." Cole v. Mileti, 133 F.3d 433, 437 (6th Cir. 1998); Phelps v. McClellan, 30 F.3d 658, 662 (6th Cir. 1994); accord Restatement (Second) of Conflicts of Law § 142(1) (1988) ("The forum will apply its own statute of limitations barring the claim."). This "general proposition" has been applied by courts in the Western District to the interpretation of choice-of-law provisions in Kentucky. See

---

[1] For purposes of this motion, the Court assumes but does not decide that the provision is enforceable. See generally Breeding v. Massachusetts Indem. & Life Ins. Co., 633 S.W.2d 717 (Ky. 1982).

4

Mills v. Smith, No. 3:05-cv-534-S, 2006 WL 2570343 (W.D. Ky. August 30, 2006).

The question in this case, then, is whether the choice-of-law provision in the contract between Land O'Frost and Carter & Burgess contains an "express statement" of an intent to incorporate the Texas statutes of limitations. According to the provision, the agreement "shall be *governed by* the law of the principal place of business of the Architect [i.e., Texas] . . ." (Design Agreement, § 1.3.7. 1) (emphasis added). Plaintiff argues that "if the Contract is 'governed' by Texas law, then the Texas statute of limitations should also apply to any efforts regarding enforcing the obligations under that Contract." (Plaintiff's Response, p. 12).

In so arguing, Plaintiff relies primarily on Mills v. Smith, No. 3:05-cv-534-S, 2006 WL 2570343 (W.D. Ky. August 30, 2006) where Judge Simpson found that a choice-of-law provision including the term "enforced" showed an intent to incorporate a state's statutes of limitations because such statutes were "integral to the question of enforceability." Id. at *2. Plaintiff also marshals the Sixth Circuit's broad descriptive language in Moses v. Business Card Express, Inc., 929 F.2d 1131, 1139-40 (6th Cir. 1991) to suggest that Land O'Frost and Carter & Burgess's use of the phrase "governed by" includes or entails "enforcement." The Court finds this argument unpersuasive.

The phrase "governed by" has typically been interpreted as incorporating only substantive law. In Godwin v. Real Estate Investment Management, Inc., No. 2:00-cv-1402, 2001 WL 1681122 (S.D. Ohio August 21, 2001), for example, the court found that a contract "did not expressly provide that Tennessee's statute of limitations

5

would apply to the enforcement of [a] promissory note" where the note was to be "governed by the laws of the State of Tennessee." Id. at *4.  Likewise, in Cole v. Mileti, 133 F.3d 433 (6th Cir. 1998), the Sixth Circuit found that a choice-of-law provision did not incorporate California's statutes of limitations where the provision used the terms "governed and construed." Id. at 437.  The Court agrees.  In this case, the parties' use of the phrase "governed by" is not an express statement that they intended for Texas's statutes of limitations to apply.  Accordingly, Plaintiff's claims are subject to Kentucky's limitations.

      B. KRS § 413.245

Defendant next argues that all of Plaintiff's causes of action are subject to KRS § 413.245's one-year statute of limitations because they arise out of Carter & Burgess's professional services.  In Kentucky, architectural services are "professional services" for purposes of KRS § 413.245. See Old Mason's Home of Kentucky, Inc. v. Mitchell, 892 S.W.2d 304, 306 (Ky. Ct. App. 1995) (finding that KRS § 413.245 was the applicable statute of limitations in an action against an architect for negligent design and for failure to provide quality work and properly supervise the project); see also Louisville/Jefferson County Metro Government v. HNTB Corp., 2007 WL 1100743 (W.D. Ky. 2007).  In this case, there is no doubt that Defendant was hired as an architect to design the Madisonville facility.  Plaintiff contends, however, that if KRS § 413.245 applies, it applies only to its claim of professional negligence and not to its negligent misrepresentation claim or (certain portions of) its breach of contract and indemnity claims.

Specifically, Plaintiff argues that its negligent misrepresentation claim (Count IV) is not covered by § 413.245 because the damages "resulted not from errors in the eventual design drawings . . . but rather from [Defendant's] failures to make timely disclosures when Plaintiff could have pursued an alternative, and less-costly site . . . ." (Plaintiff's Response, p. 17-18). In support of this contention, Plaintiff relies on the unpublished decision of <u>Mid States Steel Products Co. v. University of Kentucky</u>, No. 2003-CA-002509-MR, 2006 WL 1195914 (Ky. Ct. App. May 5, 2006) where the Kentucky Court of Appeals found that a negligent misrepresentation claim was not covered by § 413.245 because liability was based on "an independent duty to avoid misstatements intended to induce reliance" not "a professional duty." <u>Id.</u> at *12 (quotation omitted).

As Defendant correctly observes, however, <u>Mid States</u> is not binding precedent. Nor does the Court find its reasoning persuasive here. The fact of the matter is that Plaintiff's distinction between errors in design and a failure to timely disclose information is without relevant difference. KRS § 413.245 contemplates only whether an action "arises out of any act or omission in rendering professional services"; as long as it does, the provision applies.[2] Here, Defendant's failure to make "timely disclosures" was an act or omission in the course of rendering professional services that gave rise to the

---

[2] Indeed, the provision is exceptionally broad in that the one-year statute of limitations applies "[n]otwithstanding any other prescribed limitation of actions which might otherwise appear applicable" to "a civil action, whether brought in tort or contract, arising out of any act or omission in rendering, or failing to render, professional services for others . . . ." KRS § 413.245.

7

Plaintiff's misrepresentation claim. Accordingly, Plaintiff's negligent misrepresentation claim is subject to the one-year limitations period in KRS § 413.245.

Plaintiff's breach of contract and indemnity claims (Counts I and III) likewise arise from Defendant's professional services. For one thing, both of these claims are based on the very same acts and omissions that underlie Plaintiff's professional negligence claim. (Compare Complaint ¶ 40 with ¶¶ 45 and 50). Furthermore, the indemnity clause specifically provides that Carter & Burgess indemnifies the owner "from and against claims, damages, losses, and expenses . . . arising out of or resulting from the performance of the work and services called for . . . to the extent caused by the negligent acts or omissions of the architect." (Complaint, ¶ 49) (capitalization altered).

Plaintiff's argument that "breaches [of contract] which are independant of any standard of care issues . . . should not be subject to the professional liability standard" is untenable. (Plaintiff's Response, p. 21). Not only is there no support for this proposition in the statute, Kentucky courts have held that it is the existence of a professional performing a task and not the nature of the task itself that brings a claim within KRS § 413.245. <u>Vandevelde v. Falls City Builders, Inc.</u>, 744 S.W.2d 432, 433 (Ky. Ct. App. 1988). Most relevantly, the Kentucky Supreme Court has applied KRS § 413.245 to a breach of contract claim against an engineer for similar "slow performance." <u>Matherly Land Surveying, Inc. v. Gardiner Park Development, LLC</u>, 230 S.W.3d 586, 590 (2007). Accordingly, the Court finds that all of Plaintiff's claims "arise from" Defendant's "professional services" for purposes of KRS § 413.245.

C. The Limitations Period

Having found that Plaintiff's claims are subject to KRS § 413.245, the Court next considers whether they are barred by the statute's one-year limitations period. Generally, actions that fall under KRS § 413.245 "shall be brought within one (1) year from the date of the occurrence or from the date when the cause of action was, or reasonably should have been, discovered by the party injured." Id. However, this is a default rule. Contractual terms that vary the statutory limits and instead provide for shorter limitations periods are ordinarily enforceable. See Webb v. Kentucky Farm Bureau Ins. Co., 577 S.W.2d 17, 19 (Ky. Ct. App. 1978); Schultz v. Cooper, 134 S.W.3d 618, 619-21 (Ky. Ct. App. 2003) (affirming dismissal of a suit against an architect as barred by KRS § 413.245's one-year limitations period where the contract provided for an accrual date and there was no evidence of duress or disparity in bargaining power).

In the instant case, the choice-of-law clause explicitly provides an accrual date for all causes of action brought against Carter & Burgess as a result of its work designing and constructing the Madisonville facility. According to the provision, "[c]auses of action between the parties to this Agreement pertaining to acts or failures to act shall be deemed to have accrued and the applicable statutes of limitations shall commence with the issuance of the certificate of occupancy." (Design Agreement, § 1.3.7.3). Neither party suggests that this provision is unenforceable as a result of duress or disparity in bargaining power. Instead, Plaintiff simply claims that the accrual date should have been sometime in the spring of 2007 when the facility was ready for use and Carter &

9

Burgess's work was "substantially complete." (Plaintiff's Response, p. 23).  The Court disagrees.

Put simply, Plaintiff's argument disregards the plain meaning of the provision.  A basic principle of contract interpretation is that where the terms of a contract are clear, no extraneous explanation is permitted. Frear v. P.T.A. Industries, Inc., 103 S.W.3d 99, 106 (Ky. 2003).  Here, the meaning of the phrase "issuance of the certificate of occupancy" is unambiguous: it refers to the date the certificate of occupancy was issued, i.e., November 8, 2006.  Contrary to Plaintiff's contention, there is no requirement that the work be "substantially complete" before a certificate of occupancy is issued or before the parties' causes of action accrue.  The contract indicates that it is only the issuance of the certificate that matters.  Accordingly, the Court concludes that Plaintiff's claims are barred by KRS § 413.245 because the instant action was filed on November 14, 2007, over one year after the certificate of occupancy was issued.

Finally, Plaintiff argues that it should be allowed additional time for discovery.  To justify the grant of additional time for discovery, however, a plaintiff must show that postponement of a ruling on a motion for summary judgment will enable it to rebut that motion. Allen v. CSX Transp., Inc., 325 F.3d 768, 775 (6th Cir. 2003).  Plaintiff has failed to carry that burden here.  There is nothing in the proferred affidavit to suggest that additional discovery would alter the dispositive facts, i.e., that Plaintiff's claims arise out of Defendant's professional services, that the Certificate of Occupancy was issued on November 8, 2006, and that suit was filed on November 14, 2007. (Affidavit of James

Doerfler); see Ball v. Union Carbide Corp., 385 F.3d 713, 720-721 (6th Cir. 2004); Maki v. Laakko, 88F.3d 361 (6th Cir. 1996). Therefore, Plaintiff's request for additional discovery time is denied.

### III. CONCLUSION

For the foregoing reasons, Defendant's motion is **GRANTED**.

cc: Counsel of Record